**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSEPH J. D'AMICO,        :
                        :    Civil Action No. 06-3886 (RMB)
        Plaintiff,    :
                        :
        v.            :    **OPINION**
                        :
GEORGE W. HAYMAN, et al.,    :
                        :
        Defendants.   :

**APPEARANCES:**

Plaintiff pro se
Joseph J. D'Amico
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

**BUMB**, District Judge

Plaintiff Joseph J. D'Amico, a prisoner confined at South Woods State Prison in Bridgeton, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff is a Caucasian inmate at South Woods State Prison. He contends that African-American guards and other prison officials have harassed him and treated him differently from African-American inmates because of his race.

As indicative of this differential treatment, he describes several specific incidents: (1) Officer Jones has not provided him with a television, but has provided a television to another inmate, and has thrown away Plaintiff's clothing exchange forms; (2) Cheryl Bard did not comply with his request for the address of the West Windsor Police Headquarters; (3) unnamed officers returned to him, for signing, his request slip for the account statement to accompany his application for leave to proceed <u>in forma pauperis</u>, although he had already signed it; (4) when he was in the medical department, an African-American officer "harassed" him but did not harass African-American inmates and, on another occasion, an officer sent all other inmates awaiting medical treatment to lunch, but did not send Plaintiff to lunch; (5) officers harass and "jeer" at him at church services;

2

(6) everyone else on his work detail got a raise; (7) he has not received a response to his job change form.

Plaintiff characterizes this described treatment as "cruel and unusual punishment."  Pursuant to its duty to construe pro se complaints liberally, the Court construes the Complaint as attempting to assert the following claims: (1) cruel and unusual punishment under the Eighth Amendment and (2) a violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff names as defendants Executive Director of the New Jersey Department of Corrections George W. Hayman, Administrator Kathryn McFarland, Assistant Supervisor Amadon Jalloh, Social Services employee Cheryl Bard, Institution Coordinator Donna Tymkow, Classification Administrator Joyce Priancianni, and Operations Director Donna Sweeney.  Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a

governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  Where a complaint can be remedied by an

4

amendment, a district court may not dismiss the complaint with
prejudice, but must permit the amendment.  Denton v. Hernandez,
504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293
F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.
§ 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.
2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v.
Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Here, Plaintiff has alleged no facts suggesting personal involvement by any defendants except Cheryl Bard. Accordingly, all claims must be dismissed as against the other defendants.

IV.   <u>ANALYSIS</u>

A.   <u>Claims Under the Eighth Amendment</u>

The Eighth Amendment, applicable to the States through the Fourteenth Amendment, prohibits punishments that are "cruel and unusual."  An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (quoting <u>Wilson</u>, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345 (1981).  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  <u>Hudson v. McMillian</u>, 503 U.S. at 5.

As the United States Supreme Court has stated, "intentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." <u>Hudson v. Palmer</u>, 468 U.S. 517, 528 (1984).  The Eighth Amendment protects prisoners against

7

"calculated harassment." Id. at 530. Generally, however, mere verbal harassment does not give rise to a constitutional violation. See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) (vulgar language); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988). Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)(verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999) ("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); Haussman v. Fergus, 894 F. Supp. 142, 149 (S.D.N.Y. 1995); Prisoners' Legal Association, 822 F. Supp. at 187-189 & n.3 (corrections officer's use of racial slurs did not amount to constitutional violation); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y. 1989), aff'd,

8

891 F.2d 278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467
(W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir.
1988).

Allegations that prison personnel have used threatening
language and gestures also are not cognizable claims under
§ 1983. Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)
(defendant laughed at prisoner and threatened to hang him).
However, threatening language coupled with the threatening use of
a weapon and outrageous conduct by prison personnel may indicate
a constitutional deprivation. Douglas, 684 F. Supp. at 398
(brandishing a butcher knife in close proximity to prisoner and
threatening to kill him may amount to a constitutional
violation); see also Northington v. Jackson, 973 F.2d 1518 (10th
Cir. 1992) (gun was put to prisoner's head); Burton v.
Livingston, 791 F.2d 97 (8th Cir. 1986)(guard threatened to shoot
prisoner).

Here, Plaintiff's allegations that prison officers jeered at
him are insufficient to state a claim under the Eighth Amendment
for unconstitutional harassment. Nor do the combined incidents,
including a single missed lunch and delay in responding to a
request for a television and job change, rise to the level of a
constitutional violation. In McKune v. Lile, 536 U.S. 24, 41
(2002), the Supreme Court reminded us that "[c]ourts must decide
whether the [facts] are closer to the physical torture against

9

which the Constitution clearly protects or the de minimis harms against which it does not." The harms claimed here are de minimis. Cf. Johnson v. Unknown Dellatifa, 357 F.3d 539 (6th Cir. 2004) (correctional officer repeatedly banged and kicked cell door, threw food tray so top flew off, made insulting remarks, growled and snarled, smeared window so inmate could not see out, jerked and pulled inmate when escorting him); DeMallory v. Cullen, 855 F.2d 443, 445 (7th Cir. 1988) (correctional officer spit on inmate); Trujillo v. Tally, 2005 WL 1847175 (D. Idaho 2005) (guards whistled and faked coughs, refused to allow inmate to use bathroom sometimes, mixed up food before serving it). Finally, the only named defendant alleged to have participated in the pattern of harassment is Cheryl Bard. Her participation in the isolated incident of failing to provide an address "cannot give rise to any suggestion of a harassment pattern." See Burton v. Kuchel, 865 F.Supp. 456, 467 (N.D. Ill. 1994).

In addition, it is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). Again, to state a claim for unconstitutional conditions of confinement under the Eighth Amendment, an inmate must allege both an objective and a subjective component. Wilson v. Seiter, 501 U.S. 294, 298

10

(1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation."  Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety.  Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent that certain conditions are only "restrictive" or "harsh," they

11

are merely part of the penalty that criminal offenders pay for their offenses against society.  Id. at 347.  An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff's allegations including an isolated missed lunch and delay in processing a job change request are not sufficient to state a claim for unconstitutional conditions of confinement under the Eight Amendment.

Finally, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  As Plaintiff has not asserted any physical injury, his claims for damages for psychological and emotional impairment must be dismissed with prejudice.  See Allah v. Al-Hafeez, 226 F.3d 247, 250-51 (3d Cir. 2000).

B.   The Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated

12

should be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate.  Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976).  Thus, discriminatory intent must be a motivating factor in the decision, but it need not be the sole motivating factor.  Village of Arlington Heights, 429 U.S. at 265-66.

Once this intentional disparity in treatment is shown, a court will proceed to determine whether the disparity can be justified under the requisite level of scrutiny.  See City of Cleburne, 473 U.S. at 439-40; Plyler v. Doe, 457 U.S. 202, 216-17 (1982); Price v. Cohen, 715 F.2d 87, 91-92 (3d Cir. 1983), cert. denied, 465 U.S. 1032 (1984).  In testing the validity of state legislation or other official action that is alleged to deny equal protection, the "general rule is that legislation is

13

presumed to be valid and will be sustained if the classification
drawn by the statute is rationally related to a legitimate state
interest." <u>City of Cleburne</u>, 473 U.S. at 439-40.  The general
rule gives way, however, when a statute classifies by race,
alienage, or national origin;  these classifications "are
subjected to strict scrutiny and will be sustained only if they
are suitably tailored to serve a compelling state interest."  <u>Id.</u>
at 440.

The Equal Protection Clause protects prisoners from
arbitrary racial discrimination.  <u>Turner v. Safley</u>, 482 U.S. 78,
84 (1987); <u>Lee v. Washington</u>, 390 U.S. 333 (1968).  The "strict
scrutiny" standard of review applies to racial classifications in
the prison context.  <u>See</u> <u>Johnson v. California</u>, 543 U.S. 499
(2005).

"Standing alone, simple verbal harassment does not
constitute cruel and unusual punishment, deprive a prisoner of a
protected liberty interest or deny a prisoner equal protection of
the laws." <u>DeWalt v. Carter</u>, 224 F.3d 607, 612 (7th Cir. 2000)
(collecting cases).  Thus, Plaintiff cannot state an equal
protection claim based solely upon verbal harassment.  Here,
however, Plaintiff also alleges conduct, based upon racial
discrimination, including delays in responding to his requests
for a job change and television, missing a lunch, an officer
throwing away his clothing exchange forms, failure to obtain a

14

pay raise, etc.  With the exception of Cheryl Bard, however, who is alleged to have refused to give him an address, Plaintiff fails to name as defendants the persons who are alleged to have discriminated against him on the basis of race.

That leaves for resolution the question whether the allegation against Defendant Cheryl Bard is sufficient to state a claim for discrimination on the basis of race in violation of the Equal Protection Clause.  The allegation that Cheryl Bard has refused to provide social services to Plaintiff based upon his race is sufficient to state a claim for violation of the Equal Protection Clause.  Cf. Hill v. Thalacker, 399 F.Supp.2d 925, 929 (W.D. Wis. 2005) ("Discriminatory intent may be established by showing an unequal application of a prison policy or system."); Wilson v. Taylor, 2006 WL 3702223 (D. Del. 2006) (allegation that inmate was disciplined differently for an infraction, based upon race, is sufficient to state an equal protection claim).

V.   CONCLUSION

For the reasons set forth above, the equal protection claim may proceed as against Defendant Cheryl Bard only.  All other claims are dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies

15

described herein, the Court will grant Plaintiff leave to file an amended complaint.[1]  An appropriate order follows.


                                                 s/Renée Marie Bumb
                                                 RENÉE MARIE BUMB
                                                 United States District Judge

Dated: January 12, 2007

---

[1] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

16